IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT E. OGLE, RECEIVER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:12-CV-1283-D |
| VS. | § | |
| | § | |
| LESLIE BOWLIN BENNETT, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by a court-appointed receiver to recover alleged fraudulent transfers under the Uniform Fraudulent Transfer Act ("UFTA"), Tex. Bus. & Com. Code Ann. § 24.001 *et seq.* (West 2009), defendants move to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the following reasons, the court denies defendants' motion.

I

Plaintiff Robert E. Ogle is the court-appointed receiver ("Receiver") for the assets and businesses of Arthur Piner Grider, III ("Grider"). In its August 11, 2011 order approving liquidation plan in *United States v. Arthur Piner Grider, III*, No. 3:10-CV-0582-D (N.D. Tex. Aug. 11, 2011) (Fitzwater, J.) ("Order"), the court authorized the Receiver

> to bring, prosecute and settle actions for the recovery of fraudulent transfers and other damage claims against insiders and third parties, as follows: The Receiver will have standing and will be authorized to bring and prosecute . . . all claims for the recovery of fraudulent transfers or other transfers that may be avoided for the benefit of creditors of Grider or the [Grider] Entities, including without limitation all claims that may be

>      asserted under the Uniform Fraudulent Transfer Act, Tex. Bus.
>      & Com. Code Chapter 24.

Order at 4.

Pursuant to his authority as court-appointed receiver, the Receiver brought the instant suit against defendants Leslie Bowlin Bennett ("Bennett") and PR Squared, LLC ("PR"). The Receiver alleges that, from 2007 to 2010, Transglobal Services, Inc., RMI Pendragon, Inc., Talent Force Technical, LLC, and several other companies that Grider owned (collectively, the "Grider Companies") made payments to PR totaling $638,512.94.[1] According to the complaint, PR, a public relations firm that Bennett owned and controlled, did not provide to the Grider Companies any services of substantial fair value and, in fact, the payments to PR were thinly veiled gifts to Bennett, who had a personal relationship with Grider. The Receiver also alleges that, in 2009, the Grider Companies directly paid Bennett $47,000, but Bennett did not provide valuable consideration in exchange for the payments. Finally, the Receiver asserts that Grider and the Grider Companies gave extravagant gifts to Bennett, including earnings valued at more than $65,000 and a Porsche 911 Carrera Cabriolet automobile, valued at more than $85,000.

The Receiver brings a claim for recovery of fraudulent transfers under the UFTA, Tex. Bus. & Com. Code Ann. § 24.001 *et seq*. He alleges that Grider and the Grider

---

[1] In deciding defendants' motion, the court construes the Receiver's complaint in the light most favorable to the Receiver, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in the Receiver's favor. *See*, *e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

- 2 -

Companies did not receive reasonably equivalent value in exchange for the payments and other gifts to Bennett and PR, and that at the time of each such payment or gift, Grider or the Grider Company making the payment was insolvent. Therefore, according to the Receiver, all such payments or gifts were fraudulent under Tex. Bus. & Com. Code Ann. § 24.006(a). The Receiver also alleges that the payments and gifts were given with intent to hinder, delay, or defraud creditors and that the transfers to Bennett and PR were comprised, in whole or in part, of trust funds that were withheld from the paychecks to employees of the Grider Companies and that all such transfers are thus fraudulent under Tex. Bus. & Com. Code Ann. § 24.005(a)(1). The Receiver argues that, pursuant to § 24.008(a) of the UFTA, the fraudulent transfers should be avoided and judgment should be rendered against Bennett and PR for the amounts and values of the payments and gifts.

Bennett and PR move to dismiss under Rule 12(b)(1) and 12(b)(6). The Receiver opposes the motion.

II

Although defendants move to dismiss this action under Rule 12(b)(1) for lack of standing, the motion does not challenge this court's subject matter jurisdiction in the sense of constitutional standing.[2] Defendants' motion instead questions the Receiver's right to

---

[2] A Rule 12(b)(1) motion challenges a court's subject matter jurisdiction. *See*, *e.g.*, *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) ("A Rule 12(b)(1) motion to dismiss challenges the subject-matter jurisdiction of the federal court."). Defendants are not challenging this court's subject matter jurisdiction through their challenge to the Receiver's standing; instead, they are contending that the Receiver cannot recover on the merits of his UFTA claim.

recover as a receiver bringing claims for the benefit of the creditors of Grider and the Grider Companies. Accordingly, the court will treat the motion as one brought only under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiff's amended complaint by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To survive defendants' motion to dismiss, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

Bennett and PR argue that a receiver is not permitted to bring a fraudulent transfer claim on behalf of creditors of the receivership estate or the entities in receivership. They maintain that "[o]nly if the entities in receivership are legally distinct persons that suffered injury themselves will an exception to the general rule, that a receiver cannot bring third-party claims of creditors, allow the receiver to bring a fraudulent conveyance claim on behalf of the receivership entity." Ds. Mot. to Dismiss [2].

In analyzing Texas law, the Fifth Circuit has rejected a challenge to a receiver's standing to sue on behalf of creditors. *See Meyers v. Moody*, 693 F.2d 1196, 1206 (5th Cir. 1982).[3] In its decision, the *Meyers* panel quoted from *Cotten v. Republic National Bank of Dallas*, which held:

> Certainly a receiver for an insolvent insurance corporation . . . has a right to maintain a suit which is necessary to preserve the corporation's assets and to recover assets of which the corporation has been wrongfully deprived through fraud. In such a suit the receiver may be said to sue as the representative of the corporation and its creditors, stockholders and policyholders[.]

*Cotten*, 395 S.W.2d 930, 941 (Tex. Civ. App. 1965, writ ref'd n.r.e.).[4]

---

[3]Although the *Meyers* panel and other cases cited in this memorandum opinion and order use the term "standing," the parties in *Meyers* and the other cited cases were not challenging the court's subject matter jurisdiction in the constitutional sense. Texas courts, and often federal courts applying Texas law, use the term "standing" loosely to refer to a party's substantive right to recover under a specific statute.

[4]Other Texas cases support the position taken in *Cotten. See, e.g., Wheeler v. Am. Nat'l Bank of Beaumont*, 338 S.W.2d 486, 495 (Tex. App. 1960) ("[T]here are instances

Case 3:12-cv-01283-D   Document 17   Filed 07/03/12   Page 6 of 7   PageID 57

Judges of this court have also held that a receiver can bring a fraudulent transfer claim on behalf of the creditors of a receivership entity. For example, in *SEC v. Cook*, 2001 WL 256172 (N.D. Tex. Mar. 8, 2001) (Buchmeyer, C.J.), Chief Judge Buchmeyer granted summary judgment on a receiver's fraudulent transfer claim, rejecting the argument that because the receiver stood in the shoes of the debtor, and because the debtor could not himself bring a UFTA claim, the receiver did not have standing to sue under the statute. *Cook*, 2011 WL 256172, at *2. Chief Judge Buchmeyer explained:

> [A] receiver represents not only the entity in receivership, but also the interests of its creditors. After all, the very purpose of receivership is to secure the assets of the corporation for the ultimate payment to the creditors. Further, while the general rule is that the receiver may only bring actions that could have been brought by the entity in receivership, there are certain situations where the receiver is permitted to assert rights and defenses not available to the insolvent. Thus, while the debtor would not be entitled to set aside a transfer in fraud of his creditors . . . the receiver acting for the creditors may attack it.

*Id.* (internal quotation marks and citations omitted). Chief Judge Buchmeyer held that "the Receiver has standing to sue to avoid fraudulent transfers on behalf of the creditors of [the

---

where a corporation itself would not be permitted to sue for recovery of a true corporate asset because of its own fraudulent conduct in connection with the loss of the same. However, the receiver would not be so estopped. In such instances he may disaffirm or repudiate the fraudulent acts of the corporate officers and seek recovery of such assets for the benefit of the corporation and creditors. This is the rule in Texas."), *aff'd in part & rev'd on other grounds*, 162 Tex. 502, 347 S.W.2d 918 (1961); *Guardian Consumer Fin. Corp. v. Langdeau*, 329 S.W.2d 926, 934 (Tex. Civ. App. 1959, no writ) ("[W]hen the receiver acts to protect innocent creditors of insolvent corporations . . . the receiver acts in a dual capacity, as a trustee for both the stockholders and the creditors, and as trustee for the creditors he can maintain and defend actions done in fraud of creditors even though the corporation would not be permitted to do so.").

- 6 -

receivership entity]." *Id.*; *see also Janvey v. Alguire*, __ F.Supp.2d __, 2011 WL 7047035, at *2 (N.D. Tex. Sept. 6, 2011) (Godbey, J.) (holding that in its capacity as a "legal hybrid[]" that can both stand in the shoes of the defendants and also represent the creditors in their recovery efforts, "the Receiver has standing to bring creditors' [UFTA] claims.").

Accordingly, the court holds that the Receiver in this case has stated a fraudulent transfer claim under UFTA on which relief can be granted. The court therefore denies defendants' motion to dismiss.[5]

\* \* \*

For the foregoing reasons, defendants' May 17, 2012 motion to dismiss is denied.

**SO ORDERED.**

July 3, 2012.

SIDNEY A. FITZWATER
CHIEF JUDGE

---

[5] Defendants cite *Knauer v. Jonathon Roberts Financial Group, Inc.*, 348 F.3d 230, 235 (7th Cir. 2003), for the proposition that because the receivership entities are the alter egos of the wrongdoer, the Receiver has no standing. But *Knauer* did not involve fraudulent transfer claims. In *Knauer* the court recognized that "[t]he rule that a receiver stands precisely in the shoes of the corporation is, however, 'subject to the exception that the receiver so far represents the general creditors that he may avoid transactions in fraud of their rights.'" *Id.* at 236 (quoting *Marion Trust Co. v. Blish*, 84 N.E. 814, 816 (Ind. 1908)). But based on the application of Indiana law, it held that the exception that permits receivers to sue on behalf of creditors to void a fraudulent conveyance did not apply because the doctrine of *in pari delicto* barred the receiver's tort claims. "'In the Fifth Circuit and the majority of circuits, [however,] *in pari delicto* operates as an affirmative defense to a claim's merits, but [cannot] independently preclude a [receiver's] standing to bring a claim.'" *Reneker v. Offill*, 2009 WL 804134, at *6 n.6 (N.D. Tex. Mar. 26, 2009) (Fitzwater, C.J.) (quoting *In re Today's Destiny, Inc.*, 388 B.R. 737, 746-47 (Bankr. S.D. Tex. 2008)).